This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-Defendant Callos Professional Employment, Inc. has appealed from a judgment of the Akron Municipal Court that found it liable to Appellee-Plaintiff Keith Larsen for breach of contract damages in the amount of $5,474.28. This Court affirms.
 I
Callos is an employee leasing firm. In February 1996, Callos entered into a subscriber services contract with Alpha Omega Computer Services, Inc.[1] This subscriber services contract was signed on behalf of Alpha by Kirk Goodwin, President and CEO of Alpha.
Pursuant to the subscriber services agreement, Callos provided staffing for Alpha for certain job functions or positions specified in a "Payroll Exhibit" attached to the agreement. Callos also became solely responsible for the human resource management of the employees working at Alpha, as well as payment of these employees' salaries. Goodwin determined the amount of pay increases or bonuses workers at Alpha would receive, and Alpha would then send to Callos the necessary payroll information. Based on these submissions, Callos would draft the employees' checks and pay the employees. Under the terms of the agreement, Alpha agreed to reimburse Callos for the payroll expenses, plus pay Callos an administrative fee.
Callos separately entered into employment agreements with various personnel hired to work at Alpha. Callos thereby became the employer of the personnel it provided to staff Alpha, including Goodwin and Larsen. Callos distributed to its employees an employee handbook containing numerous terms and conditions of the employer-employee relationship.
Larsen began working for Alpha, through Callos, in December 1998. His job responsibilities at Alpha included overseeing receivables, calling customers for outstanding balances, general office management, and submission to Callos of payroll information that was approved by Goodwin.
Approximately halfway through Larsen's employment, Goodwin instructed Larsen and other employees at Alpha to begin "banking" hours to reduce Alpha's short-term expenses. Hours that were banked were not immediately submitted to Callos for compensation; rather, they were recorded in a database to be submitted for payment at a later time. Larsen's claims in this suit included payment for a total of eighty banked hours for which he had never been compensated at the time he stopped working at Alpha.
In February 2000, Goodwin informed Larsen that Alpha was going to be downsizing in an effort to reduce expenses, and advised Larsen to seek employment elsewhere. Larsen did find another position, and left his employment with Alpha on March 3, 2000. On this date, Larsen met with Goodwin to discuss his outstanding claims against Alpha. These outstanding claims included payment for the eighty banked hours Larsen had accrued; a $2,700.00 bonus Goodwin had declared in the third quarter of 1999 but never paid to Larsen; payment for ten days of vacation Larsen never took in 1999 and two days of vacation he never took in 2000; and payment for 13.5 hours Larsen worked in March 2000. At this meeting, Goodwin indicated that Alpha did owe Larsen for these expenses and that Alpha would pay them.
Larsen's outstanding claims, however, were never submitted to Callos for payment, and were never paid by Callos. Larsen then brought this action against Callos seeking payment of his outstanding claims, alleging breach of the employment contract. The matter was tried to a judge in the Akron Municipal Court. The trial court rendered judgment for Larsen for $5,474.28, the full amount of Larsen's claims. Callos has timely appealed, asserting three assignments of error.
 II Assignment of Error Number One The trial court erred in finding that [Callos] breached the contract when the uncontroverted evidence proved failure of material conditions to the contract.
In its first assignment of error, Callos has argued that the trial court erred in finding that Callos breached its contractual obligations because Larsen failed to perform material conditions precedent thereto. Specifically, Callos has asserted that a condition precedent to Callos' promise to pay Larsen was that Larsen provide Callos certain payroll information including hours that were banked, hours worked, vacation time accrued, and the bonus declared by Goodwin. It was undisputed that none of this information had been submitted to Callos by either Larsen or Alpha prior to this suit.
The construction of written contracts is a question of law, and is reviewed by this Court de novo. Long Beach Assn. v. Jones (1998),82 Ohio St.3d 574, 576. Where the interpretation of contract terms depends on the evidence of the parties' intent presented at trial, however, the trial court's factual determinations are reviewed under an abuse of discretion standard. Laconte Ent. v. Cuyahoga County (Aug. 30, 2001), Cuyahoga App. No. 78357, unreported, 2001 Ohio App. LEXIS 3868, at *7.
A condition precedent is a condition that must be performed before the obligations in the contract become effective. Mumaw v. Western SouthernLife Ins. Co. (1917), 97 Ohio St. 1, 8-9. Whether a provision in a contract is a condition precedent depends on the parties' intent. Trohav. Troha (1995), 105 Ohio App.3d 327, 334. The intent of the parties is determined "by considering not only the language of a particular provision, but also the language of the entire agreement and its subject matter." Id. "While parol evidence is inadmissible to vary the unambiguous terms of a written contract, it is admissible to establish a condition precedent to the existence of a contract." Riggs v. TheStandard Slag Co. (Nov. 10, 1993), Summit App. No. 16199, unreported, at 3.
In its arguments to this Court, Callos has not clearly distinguished which contractual obligations arose out of the subscriber services contract and which arose out of Callos' employment agreement with Larsen. This Court, however, finds such a distinction critical to its resolution of the issues Callos has presented for appeal.
Larsen was the only witness to testify at trial. His testimony was uncontroverted that the subscriber services agreement was signed by a representative of Callos, and by Kirk Goodwin on behalf of the subscriber Alpha. This testimony was also supported by the subscriber services agreement itself. However, there was no evidence or testimony: (1) that Larsen was a party to the subscriber services agreement; (2) that Larsen had any contractual obligations to Callos under that agreement; or (3) that Larsen knew of the agreement's provisions. In fact, the subscriber services agreement, signed in February 1996, was already in effect when Larsen began working at Alpha in December 1998, and continued in effect when Larsen left Alpha in March 2000. Any contractual duties that existed between Larsen and Callos could therefore not have been premised on the subscriber services agreement, which was binding only on Callos and Alpha.
Rather, the obligations owed by Larsen and Callos to each other arose under the employment agreement between them. Callos adduced no evidence at trial tending to show that its employment agreement with Larsen contained a condition precedent, by which the parties intended to make Callos' obligation to pay Larsen for his payroll claims conditional on Callos' receipt of payroll information or proper authorization from Alpha. Nor did Callos produce any evidence that Larsen himself was contractually bound by the employment agreement to submit payroll information to Callos. Rather, the submission of payroll information appears to have been an obligation imposed upon Alpha pursuant to the subscriber services agreement. Larsen's uncontroverted testimony concerning his communication with Callos about payroll and compensation matters was only that such communication was included in his job responsibilities at Alpha, as determined by his supervisor, Goodwin.
Callos has not cited, and the record fails to disclose, any evidence presented at trial to support Callos' claim that Larsen and Callos intended by their employment agreement for Larsen to provide payroll information as a condition precedent to Callos' contractual obligation to pay Larsen for his claims. Callos' first assignment of error is overruled.
 Assignment of Error Number Two The trial court erred in failing to find that [Larsen] waived his contractual right to payment through his own conduct.
 Assignment of Error Number Three The trial court erred in failing to find that [Larsen] was equitably estopped from asserting his contractual right to payment.
In its second and third assignments of error, Callos has argued that the trial court erred in failing to find that by his own conduct Larsen waived his right to, and was equitably estopped from asserting any right to, payment for his claims. This Court disagrees.
A waiver is a "voluntary relinquishment of a known right." Chubb v.Ohio Bur. of Workers' Comp. (1998), 81 Ohio St.3d 275, 278. In order to waive one's right, one must have the opportunity to choose between enforcing and relinquishing the right. Id. at 279. Equitable estoppel, on the other hand, does not require intent to relinquish the right, but instead "prevents relief when one party induces another to believe certain facts exist and the other party changes his position in reasonable reliance on those facts to his detriment." Id., quoting Stateex rel. Chavis v. Sycamore City School Dist. Bd. of Edn. (1994),71 Ohio St.3d 26, 34.
Callos has contended that Larsen's failure to submit to Callos pertinent payroll information was a voluntary relinquishment of his right to payment, and constituted conduct inducing detrimental reliance by Callos. As discussed supra, however, Callos has pointed to no evidence showing that Larsen was bound under his employment agreement with Callos to submit payroll information. Nor has Callos cited any evidence showing that Larsen was aware of any terms in the subscriber services agreement between Callos and Alpha prohibiting Alpha from deferring submission of its employees' payroll claims. Larsen's uncontroverted testimony at trial established only that submitting payroll information to Callos was one of his job responsibilities at Alpha.
Larsen's obedience to instructions by his supervisor Goodwin a Callos employee — to defer submitting payroll claims for compensation cannot be construed as either a voluntary relinquishment of Larsen's right to payment, or conduct inducing detrimental reliance by Callos. Likewise, Larsen's meeting with Goodwin at the end of Larsen's employment with Alpha to discuss his outstanding payroll claims indicates that Larsen was asserting, rather than voluntarily relinquishing, his right to payment for these claims. Accordingly, Callos' arguments concerning waiver and equitable estoppel are without merit.
 III
Callos' assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
BAIRD, P.J., SLABY, J. CONCUR.
[1] Alpha is not a party to this appeal, and apparently was the subject of bankruptcy proceedings prior to this suit.